KATHLEEN O'HARA, Plaintiff-Appellant, v. HOLY CROSS HOSPITAL *et al.*, Defendants-Appellees.

First District (2nd Division)  Nos. 1—88—0509, 1—88—2476 cons.

Opinion filed May 23, 1989.—Rehearing denied August 15, 1989.

David L. Poindexter, of Holstein, Mack & Dupree, of Chicago, for appellant.

Mary Jo Connelly, of Sweeney & Riman, Ltd., and D. Kendall Griffith, Mary Tobin Duffy, and Gerald Haberkorn, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, both of Chicago, for appellees.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Kathleen O'Hara, appeals from orders of the trial court granting summary judgment in favor of defendants, Holy Cross Hospital and Emergency Medicine, S.C., and dismissing her cause of action with prejudice. Counts III and IV of plaintiff's amended complaint, alleging negligence and wilful and wanton misconduct against Stanley Fronczak, M.D., are not involved in this appeal.

Various depositions, affidavits and the pleadings were considered by the trial court prior to granting summary judgment. The record reveals that on February 28, 1982, Patrick O'Hara was 11 years old. On that date, he incurred a laceration when he was hit in the face by a golf club. His mother, plaintiff Kathleen O'Hara, took him to the emergency room of Holy Cross Hospital for treatment.

Defendant Holy Cross Hospital leased the operation of its emergency room to defendant Emergency Medicine, S.C. Under the terms of the agreement, Emergency Medicine provided emergency room physicians while Holy Cross provided the nurses, administrative personnel, space and equipment. The trial court found that Dr. Max Domie Koenigsberg was the agent of Emergency Medicine and that a principal and agent relationship existed between Holy Cross Hospital and Emergency Medicine.

Summary judgment was first granted in favor of Emergency Medicine. One of the grounds urged by Holy Cross Hospital for summary judgment was that a principal cannot be held liable if its agent is not liable. To achieve this favorable result, it had to acknowledge that Emergency Medicine was its agent.

Count I of plaintiff's amended complaint is directed against Holy Cross Hospital, while count II is directed against Emergency Medicine. Each defendant is alleged to owe a duty of reasonable care to the plaintiff. Each defendant is alleged to have violated that duty to the plaintiff by:

> "a. allowing Plaintiff to remain in the emergency room when it knew or should have known that Plaintiff was susceptible to fainting when she saw her son receiving stitches;
>
> b. requesting Plaintiff to assist in the emergency care of her son by asking here to wipe novocaine from his mouth;
>
> c. allowing Plaintiff to assist in the emergency care of her

son by allowing her to wipe novocaine from her son's mouth;

    d. failing to have the emergency room adequately staffed such that it would not be necessary to request Plaintiff to participate in the emergency medical care of her son."

At his deposition, Dr. Koenigsberg testified about emergency room policy at Holy Cross Hospital in February 1982:

    "Q. Do you know what the hospital policy was in February of 1982, for people being in the emergency room, within the confines of a room or a cubicle who are not the injured patient?

\* \* \*

    A. We usually—the practice to allow one visitor at a time with the patient, assuming there was not an emergency going on that would preclude them from being in the room. And with the pediatric patient we are usually required to have someone staying with the child for their comfort."

Dr. Koenigsberg also testified that the child requested that his mother be present and that he documented the request in the record in his own handwriting. Dr. Koenigsberg further deposed:

    "Q. Was there anything unusual that you can remember as you sit her today about the administration of the anesthesia to Patrick O'Hara?

    A. Just the normal problems when you have a mother in the room when you're administering anesthesia, there is some leakage out of the wound of the Xylocaine and some of it trickled down to the corner of his mouth and at that point she reached unto my tray for a piece of gauze. I immediately raised my voice, instructing her not to do that; that was sterile and told her that it was dangerous to contaminate the sterile barrier.

\* \* \*

    Q. And, is it your testimony that the mother on her own simply reached over to the tray in [an] attempt to get something to wipe off her son's face?

    A. She did.

\* \* \*

    Q. Did Kathleen O'Hara actually touch something on the tray?

    A. I don't recall whether she actually contaminated the tray or not—if she had, I would have boarded off that area and covered it with a sterile towel. What I did is at that point when the child was complaining of the taste—the Xylocaine is bitter and she had a kleenex crumpled up in her hand, I believe, and

went to use that and at that point I handed her a sterile towel and the nurse and I lifted up the drape over his face just enough so she can wipe his mouth.

\* \* \*

Q. And, do you remember anything unusual occurring during the suturing of the wound?

A. I certainly do.

Q. What was that?

A. Well, after having the child all prepped and draped and anesthetized and all comforted upon—at that point I was involved with the child and talking to him, solely; and with the first position of the first suture which went into the skin on the one side and came out the other side, there was a drop of blood. At that point, I was continuing working and I saw a blur move out of my field of vision. I did not look up—I just saw a blur move away from my field of vision and I would have put down the instrument and immediately started tying, and as I did that I saw a blur fall into my field of vision and heard a smack on the ground that sounded like a sledge hammer and the little boy said, 'What's that?' and I said, 'Oh, nothing, mommy just fell to the ground; she's okay; she just got a little sick;' calming the child so he would allow me to finish the procedure rapidly and he was—at that point—calm enough for the nurse to leave the bedside, holding the child and immediately see to Mrs. O'Hara.''

Plaintiff testified at her deposition that she was in the area of the emergency room where treatment was rendered to her son, at the invitation of a nurse (an agent of Holy Cross Hospital), and at the invitation of Dr. Koenigsberg (an agent of Emergency Medicine). She had never fainted before and she has not fainted since. She saw her son's wound while taking him to the hospital and in the emergency room. The doctor requested her to assist by wiping her son's mouth. Her faint was caused by having to observe the surgical procedure on her son's face simultaneously with the moment she was responding to the doctor's instructions to wipe her son's mouth.

On January 11, 1988, the trial court granted Emergency Medicine's motion for summary judgment and dismissed plaintiff's cause of action, with prejudice, as to this defendant. Plaintiff appealed.

While plaintiff's appeal was pending, defendant Holy Cross Hospital moved for summary judgment on the ground that it had no duty to plaintiff, as asserted in Emergency Medicine's prior summary judgment motion. The prior dismissal of the hospital's alleged agent re-

quired the dismissal of the hospital. Holy Cross Hospital was granted summary judgment and plaintiff's cause of action was dismissed. We consolidated plaintiff's appeals from the judgments in favor of both defendants.

The principal issue on appeal is whether the trial court properly granted summary judgment in favor of both defendants.

## I

■ A trial court should grant a motion for summary judgment where the pleadings, depositions, and affidavits, if any, show that there is no genuine issue as to any material fact and the moving party's right to the judgment is clear and free from doubt. Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 566, 396 N.E.2d 1197, *appeal denied* (1980), 79 Ill. 2d 630.

■ The sole function of this court in reviewing the trial court's entry of summary judgment is to determine whether the trial court correctly ruled that no genuine issue of material fact has been raised, and if none was raised, whether the judgment was correctly entered for the moving party as a matter of law. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 21, 414 N.E.2d 865, *appeal denied* (1981), 83 Ill. 2d 569.) In determining if a material question of fact exists, the pleadings, depositions, affidavits and admissions, if any, should be construed strictly against the moving party and liberally in favor of the opponent. (*Barnes v. Rakow* (1979), 78 Ill. App. 3d 404, 410, 396 N.E.2d 1168.) It is the trial court's judgment that is on appeal and not whatever else it may have said. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.

■ Summary judgment is a drastic method of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) It is not intended to be used as a means of weighing conflicting issues of fact. *Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 1053, 398 N.E.2d 60, *appeal denied* (1980), 79 Ill. 2d 631.

■ By construing the pleadings, depositions and affidavits strictly against the defendants and liberally in favor of the plaintiff, we conclude that a genuine issue of material fact exists.

Plaintiff's presence during the surgical procedure was in accordance with hospital policy. She was invited to be present by both the doctor and nurse, and responded to the doctor's request to assist her son. This evidence tends to support plaintiff's allegations of specific

acts of negligence by defendants, which constituted a violation of their duty to her. On the basis of this record, we cannot determine that there is "no genuine issue of material fact."

Therefore, the trial court erred in granting summary judgment in favor of defendants.

## II

Holy Cross Hospital also contends that as a landowner, it was not required to warn the plaintiff, its invitee, of an open and obvious danger.

The controlling Illinois case is *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, which applied Restatement (Second) of Torts sections 343 and 343A, to establish and limit the duty of a landowner.

■ Section 343 premises liability on: (1) an unreasonable risk of harm; (2) invitees failing to protect themselves from the harm; and (3) failure to exercise reasonable care to protect the invitees. (Restatement (Second) of Torts §343 (1965).) Under the rule, defendant owes a duty. Dr. Koenigsberg admitted that it was possible that a person in plaintiff's situation could faint.

■ Section 343A limits liability in the face of known or obvious dangers unless: (1) the landowner should anticipate the harm despite knowledge or obviousness; or (2) the landowner expects that the invitee's attention may be distracted so that he will not discover what is obvious, or will forget what he has discovered or failed to protect himself against. Restatement (Second) of Torts §343A, comment *f*, at 220-21 (1965).

■ Based on the record in this case, the issue of "open and obvious danger" is disputed. There is testimony that hospital policy permitted plaintiff to be present. She saw her son's wound on the trip to the hospital, in the emergency room, and during the surgical procedure in which her assistance and participation was requested. She never fainted before or since.

Therefore, summary judgment was improperly granted.

## III

This case was concluded by summary judgment in favor of both defendants and the dismissal of plaintiff's cause of action with prejudice. There is no need to review any issue dealing with a motion to dismiss the plaintiff's complaint. See *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 406, 312 N.E.2d 605.

Accordingly, the judgments of the circuit court of Cook County

are reversed and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

HARTMAN and SCARIANO, JJ., concur.