ROBERT J. ALLEN *et al.*, Plaintiffs, v. KENNETH L. STORER *et al.*, Defendants-Appellees (Rose Allen, Plaintiff-Appellant).—MATLACK, INC., Plaintiff, v. J.B. HUNT TRANSPORT SERVICES, INC., *et al.*, Defendants.

Fourth District  No. 4—92—0176

Opinion filed September 30, 1992.

Paul E. Wieck, of Bennett, Schroeder & Wieck, of Marshall, for appellant.

Stephen L. Corn and Jonathan L. Kazense, both of Craig & Craig, of Mattoon, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

This appeal is taken from a summary judgment entered in the circuit court of Clark County with regard to that portion of a complaint alleging an action for loss of consortium. These consolidated cases (Clark County case Nos. 89—L—18, 89—L—28) were initiated to resolve a dispute as to liability and damages allegedly resulting from a collision between two semitrailers and a Chevrolet pickup truck, also pulling a trailer, which occurred on Interstate 70 at or near the City of Martinsville, in the County of Clark, Illinois, at approximately 10:05 a.m. on December 18, 1987. In count III of the

complaint filed by plaintiffs Robert J. Allen, Rose Allen, and David M. Morgan against defendants Kenneth L. Storer and J.B. Hunt Transport Company (Clark County case No. 89—L—28), Rose Allen, hereinafter referred to as plaintiff, sought damages for loss of consortium from defendants due to injuries sustained by her husband, Robert J. Allen. As to count III, defendants filed a motion for summary judgment, contending there was no genuine issue of material fact concerning plaintiff's relationship with Allen and that they were not married on the date of the collision. On November 6, 1991, the trial court entered summary judgment in favor of defendants as to count III. On February 11, 1992, on the motion of plaintiff, the trial court entered an order finding there was no just reason to delay enforcement or appeal of the November 6, 1991, order granting summary judgment on count III. Thereafter, plaintiff filed a timely notice of appeal.

On appeal, the only issue raised is whether the Illinois public policy, as evidenced by statute invalidating common-law marriages contracted in Illinois (see Ill. Rev. Stat. 1991, ch. 40, par. 214), prohibits a non-Illinois resident from obtaining damages for loss of consortium simply because the party is the spouse of an injured person under a valid marriage recognized by the common law of another State. For the purpose of this appeal, the parties *assume* plaintiff's marriage was valid under the laws of Ohio.

In *University of Illinois v. Continental Casualty Co.* (1992), 234 Ill. App. 3d 340, 343, this court reiterated the general principles regarding summary judgment as follows:

"Pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005), a party may move for summary judgment and may file supporting affidavits. The opposing party may file counteraffidavits. In addition to the affidavits, the trial court may consider the pleadings, depositions and admissions to determine whether any genuine issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. This procedure allows the trial court to determine if a genuine issue of material fact exists, but not to try the issue. While summary judgment facilitates the prompt disposition of lawsuits, it is a drastic remedy allowed only when the moving party's right to it is clear and free from doubt. In determining the propriety of granting summary judgment, the trial court should construe pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally

in favor of the respondent. Although inferences may be drawn from undisputed facts, an issue should be decided by the trier of fact and summary judgment denied where reasonable persons could draw divergent inferences from the undisputed facts. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 357-59, 543 N.E.2d 1304, 1307-08.) In reviewing the granting of summary judgment, the role of the reviewing court is to determine if the trial court correctly ruled that no genuine issue of material fact exists, and if none exists, whether judgment was correctly entered for the moving party as a matter of law. (*O'Hara v. Holy Cross Hospital* (1989), 185 Ill. App. 3d 694, 699, 542 N.E.2d 11, 14, *aff'd* (1990), 137 Ill. 2d 332, 561 N.E.2d 18.)

'The entry of summary judgment is not a matter within the discretion of the trial court. In reviewing a trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case and determine whether the trial court was correct.' (*Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.)"

The parties point to no facts which establish a valid common-law marriage existed under the laws of Ohio. Nor is there definite evidence a valid common-law marriage did not exist. Indeed, the trial court did not determine that a valid common-law marriage existed. The order of the trial court stated as follows:

"Plaintiff claims, however, and for purposes of this motion the Court will accept as true, the assertion that she and Robert Allen were lawfully married, without benefit of a marriage license, under the common law of the State of Ohio, their domiciliary [S]tate."

Plaintiff's brief suggests:

"[A]ny issues as to whether the parties were sufficiently married under the common law of the State of Ohio, pursuant to the Affidavits filed on their behalf *** is [*sic*] not a subject of this Appeal since that is a question of fact, the resolution of which should be made at trial."

■■ ■ Although there has yet been no factual determination of whether a valid marriage existed between plaintiff and Allen under the law of Ohio, we understand the trial court's ruling to be that, even if there is a valid common-law marriage under Ohio law, plaintiff is not entitled to seek damages for loss of consortium because of the public policy of Illinois as evidenced by the statutory declara-

tion of invalidity of purported common-law marriages contracted in this State after 1905 (see Ill. Rev. Stat. 1991, ch. 40, par. 214).

> "As recognized in *Shreve v. Faris* (1959), 144 W. Vir. 819, 824, 111 S.E.2d 169, 173:
>
>> 'Consortium is a right which the law recognized in a husband, arising from the marital union, to have performance by the wife of all those duties and obligations in respect of him which she undertook *when she entered into the marriage relation* \*\*\*.' (Emphasis added.) See also 4 C.J.S. *Husband & Wife* § 11 (1944).
>
> It is comprised of not only material services but also elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 427, 170 N.E.2d 881; *Manders v. Pulice* (1968), 102 Ill. App. 2d 468, 242 N.E.2d 617, *aff'd* (1970), 44 Ill. 2d 511, 256 N.E.2d 330.) The foundation of plaintiff's claim for expenses and damages for loss of consortium is that he was the lawful husband at the time of his wife's accident. Without such a lawful relationship, there can be no recovery by plaintiff. *Domany v. Otis Elevator Co.* (6th Cir. 1966), 369 F.2d 604, 609." (*Sostock v. Reiss* (1980), 92 Ill. App. 3d 200, 205-06, 415 N.E.2d 1094, 1098.)

The corollary rule is, if there is a lawful marital relationship, an action for loss of consortium will be recognized in favor of the non-injured spouse. Of course, plaintiff must plead and prove the existence of a lawful marital relationship.

> "Public policy has been defined as 'Judicial decisions, legislation and constitutions as well as customs, morals and notions of justice which may prevail in a state.' (Speidel, 'Extra-territorial Assertion of the Direct Action Statute: Due process, Full Faith and Credit and the Search for Government Interest,['] 53 Northwestern U. Law Review 179, 200.)" *Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 332, 239 N.E.2d 799, 802.

■ In Illinois, common-law marriages are no longer valid. Section 214 of the Illinois Marriage and Dissolution of Marriage Act (Act) states as follows: "Common law marriages contracted in this State after June 30, 1905 are invalid." (Ill. Rev. Stat. 1991, ch. 40, par. 214.) In *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 64-65, 394 N.E.2d 1204, 1211, the Illinois Supreme Court observed:

> " 'Despite its judicial acceptance in many states, the doctrine of common-law marriage is generally frowned on in this coun-

try, even in some of the states that have accepted it.' (52 Am. Jur. 2d 902 *Marriage* sec. 46 (1970).) Its origins, early history and problems are detailed in *In re Estate of Soeder* (1966), 7 Ohio App. 2d 271, 220 N.E.2d 547, where that court noted that some 30 States did not authorize common law marriage. Judicial criticism has been widespread even in States recognizing the relationship. (See, *e.g, Baker v. Mitchell* (1941), 143 Pa. Super. 50, 54, 17 A.2d 738, 741, 'a fruitful source of perjury and fraud \*\*\*'; *Sorensen v. Sorensen* (1904), 68 Neb. 500, 100 N.W. 930.) 'It tends to weaken the public estimate of the sanctity of the marriage relation. It puts in doubt the certainty of the rights of inheritance. It opens the door to false pretenses of marriage and the imposition on estates of suppositious heirs.' 7 Ohio App. 2d 271, 290, 220 N.E.2d 547, 561.''

Nevertheless, the statute prohibits only common-law marriages contracted in this State, and Illinois cannot direct Ohio or any other State to declare invalid common-law marriages.

██ █ The Illinois Supreme Court has already considered the recognition in Illinois of a common law marriage valid under the laws of another State, although the factual context in which the issue was raised differs from that in the case at bar. *Peirce v. Peirce* (1942), 379 Ill. 185, 191-92, 39 N.E.2d 990, 993, provides the following recitation of the law:

"The cases of *Wilson v. Cook*, 256 Ill. 460, and *Stevens v. Stevens*, 304 Ill. 297, are cited for the proposition that a common law marriage is void in Illinois, even if performed in some other jurisdiction. The rule, however, is limited to the situation where the parties whose marriage is sought to be upheld in Illinois were, at the time of the marriage, domiciled in Illinois, although the marriage occurred in another State. The general rule of conflict of laws is that the marital status is governed by the law of the State of domicile. *Longhran v. Longhran*, 292 U.S. 216, 54 Sup. Ct. 684; *People v. Shaw*, 259 Ill. 544; 35 Am. Jur. (Marriage) 286, par. 170.

As was said in *Stevens v. Stevens, supra*, 'The status of citizens of a State in respect to the marriage relation is fixed and determined by the law of that State, but marriages of citizens of one State celebrated in another State which would be valid there are generally recognized as fixing the status in the State of the domicile with certain exceptions, such as marriages which are incestuous according to the generally

recognized belief of Christian nations, polygamous, or which are declared by positive law to have no validity in the State of the domicile. Such marriages contracted between the citizens of a State in other States in disregard of the statutes of the State of their domicile will not be recognized in the courts of the latter State though valid where celebrated.' Where the parties are domiciled in another State at the time of contracting a common law marriage, valid in such State, such marriage will be considered valid here upon their removal to Illinois. *Young v. Young*, 213 Ill. App. 402; *Acklin v. Employees Benefit Ass'n*, 222 id. 369."

In *Peirce*, it was necessary to recognize the attainment of marital status under Nevada law "insofar as it operates to make the children legitimate." (*Peirce*, 379 Ill. at 191, 39 N.E.2d at 993.) In any event, these legal principles have now been codified by the enactment of section 213 of the Act, which states as follows:

"All marriages contracted within this State, prior to the effective date of this Act, or outside this State, that were valid at the time of the contract or subsequently validated by the laws of the place in which they were contracted or by the domicile of the parties, are valid in this State, except where contrary to the public policy of this State." (Ill. Rev. Stat. 1991, ch. 40, par. 213.)

This section is a continuation of the prior common law of this State. (Ill. Ann. Stat., ch. 40, par. 213, Historical & Practice Notes, at 62 (Smith-Hurd 1980).) Therefore, *if* plaintiff proves she had a valid marriage to Allen under Ohio law at the time of the injury-causing incident, she is entitled to pursue an action for loss of consortium.

The summary judgment of the circuit court of Clark County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

GREEN, P.J., and STEIGMANN, J., concur.