IN THE MATTER OF THE PARENTAL RIGHTS AS TO JESSICA FAITH OREN AND LEVI ALLEN OREN, LARRY OREN, APPELLANT, v. THE STATE OF NEVADA, DEPARTMENT OF HUMAN RESOURCES, RESPONDENT.

No. 29277

May 22, 1997

939 P.2d 1039

*Roeser & Roeser,* Zephyr Cove, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *Donald W. Winne, Jr.,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

*Per Curiam:*

Larry Oren is the father of three children who were removed from Larry's care in 1993 after the Department of Child and Family Services (DCFS) verified a report of child neglect. Larry pleaded guilty to three counts of misdemeanor child neglect or endangerment, and was placed on probation.

Larry's children were returned to his home, but Larry's probation was revoked and he was sentenced to one year in jail after he was found in possession of drug paraphernalia. DCFS filed a petition to terminate Larry's parental rights, which was granted by the district court after a hearing was conducted. The district judge in the termination case had previously been employed as a deputy district attorney and had given advice regarding which crimes to charge Larry with for the 1993 neglect case; the same district judge had also represented the state in Larry's first protective custody hearing. Larry's counsel filed a motion to disqualify the district judge based on these grounds, and the motion was denied.

Because we conclude that the district court should have granted the motion to disqualify, we reverse the order terminating Larry's parental rights and remand the case to the district court for another termination hearing.

## FACTS

On July 19, 1993, Larry's children were removed from his care after the DCFS substantiated an anonymous report that the children were unsupervised. Larry was arrested on that same day, and on October 6, 1993, Larry pleaded guilty to three counts of misdemeanor child neglect or endangerment, was sentenced to one year imprisonment (which was suspended), and was placed on probation for three years.

The children were returned to Larry's care around April 1994. However, in late July, 1995, Larry was evicted from his apartment because he could not pay the rent. After Larry was evicted, he and the children moved in with Larry's sister, Diane Parodi, and her family. On September 11, 1995, the Department of Parole and Probation conducted a search of the Parodi's home and found Larry in possession of drug paraphernalia. Larry was then given a urine test, which came back positive for marijuana. On October 9, 1995, Larry admitted to violating his probation conditions, his probation was revoked, and he was sentenced to one year in jail.

On November 20, 1995, the State filed a petition to terminate Larry's parental rights on various grounds.[1] The termination proceeding was conducted before district judge Michael Gibbons. Prior to becoming a district judge, Judge Gibbons had been a deputy district attorney. During the termination hearing, Judge Gibbons stated that he had no knowledge of Larry's case through his previous employment as a deputy district attorney; however, he did know of Larry because he had acted as the judge in some of Larry's 432B protective custody hearings, Larry's probation violation hearing, and the adoption of one of Larry's children. Larry did not recognize Judge Gibbons as the former deputy district attorney who had participated in prior proceedings involving him. Larry's counsel, Terri Steik Roeser (Roeser), asked Judge Gibbons for an assurance that he could base his decision in the instant case solely on the evidence presented, which Judge Gibbons gave.

On June 25, 1996, after several days of testimony at the parental termination hearing, Larry received discovery documents from the State consisting of case narratives. In one of the case narratives, DCFS listed Michael Gibbons as the deputy district attorney in Larry's criminal case and 432B case.[2] Roeser

---

[1]Because we are reversing this case based on the district court's error in denying the motion for judicial disqualification, we will not address the facts or issues regarding the termination of Larry's parental rights.

[2]The criminal case refers to Larry's child neglect case from 1993. The 432B hearings refer to the protective custody/progress hearings to determine Larry's status with the case plan. These were kept as separate files.

wanted to know whether Gibbons had had any involvement with those cases or whether he had simply filed the criminal petition. The prosecutor stated that he believed that deputy district attorney Kris Brown had filed the charges and conducted the plea canvass, and that the notation may have been erroneous in that Gibbons had initially been the contact person at the district attorney's office, but that he had not handled the case. Judge Gibbons stated:

> Well, I know I didn't handle the case. But, I thought I put on the record at the start of this trial what involvement I had ' or didn't have, and in 1993 I was working up at the Lake Tahoe office and Miss Brown was the main person at the Minden office. We didn't, we discussed some cases, but we didn't routinely discuss all cases.
>
> I can't remember what I said when we started this trial, but I did not work on the case at any point in time in any fashion. So, if I had, I wouldn't even have heard this to begin with.

On June 27, 1996, Roeser filed a motion to disqualify Judge Gibbons. Roeser's affidavit stated that she had subpoenaed and reviewed the files for Larry's criminal case and 432B hearings to insure that Judge Gibbons had not participated in those proceedings. With regard to the criminal case, the files indicated that while employed as a deputy district attorney, Judge Gibbons had given advice regarding which criminal charges to file against Larry, suggesting that he should be charged with three gross misdemeanor offenses of child neglect. Judge Gibbons had also suggested that a DCFS case worker was an essential witness that should be added to the witness list, and that all medical reports on the children needed to be obtained. Furthermore, with regard to Larry's 432B hearings, the file indicated that Judge Gibbons had represented the State at the first protective custody hearing in late 1993.

The disqualification motion was heard by district judge David Gamble. Judge Gibbons filed an affidavit which stated that he had acted as a judge in some of Larry's 432B hearings, Larry's probation violation hearing, and the adoption of one of Larry's children. He also stated that he had learned that he had been involved in charging Larry's criminal case in 1993 (which led to the children's removal) and had appeared as counsel for the State in the first 432B hearing, but further stated that he had no independent recollection of those events. Judge Gibbons stated that despite this involvement, he believed that he could fairly and impartially decide the termination case.

Judge Gamble denied the motion to disqualify Judge Gibbons. Judge Gamble stated that the motion was untimely because Larry

was in the best position to know that Gibbons had previously been the prosecuting attorney in his criminal case and first 432B hearing and, therefore, should have notified Roeser of those facts prior to the commencement of the termination hearing. Judge Gamble also stated that Judge Gibbons had not previously acted in the parental termination hearing and had, instead, participated in the criminal case involving the 1993 neglect. However, because the cases involved the same children and many of the same issues, Judge Gamble had to determine whether Judge Gibbons harbored any express or implied bias towards Larry. Judge Gamble stated that because Judge Gibbons had indicated in his affidavit that he had no bias, and because it appeared that Judge Gibbons did not even have a recollection of the case, no bias against Larry existed. A written order memorializing this decision was filed on July 29, 1996.

Larry now appeals the denial of the motion to disqualify Judge Gibbons.

### DISCUSSION

We conclude that Judge Gamble erred in denying Larry's motion to disqualify Judge Gibbons. First, the motion to disqualify was timely filed. NRS 1.235 states:

> 1. Any party to an action or proceeding pending in any court other than the supreme court, who seeks to disqualify a judge for actual or implied bias or prejudice must file an affidavit specifying the facts upon which the disqualification is sought. . . . [T]he affidavit must be filed:
> (a) Not less than 20 days before the date set for trial or hearing of the case. . . .

The motion to disqualify was filed on June 27, 1996, over three months after the trial had commenced on March 1, 1996. However, we conclude that the motion was still timely because it was filed immediately after Larry's counsel received the information which proved that Judge Gibbons had acted in some capacity in the criminal neglect and 432B protective custody proceedings. We agree with the district court's conclusion that Larry was in the best position to know that Judge Gibbons had previously acted as a district attorney against him; Larry had only one case against him and was in a better position to remember all of the parties in those actions than was Judge Gibbons, who had handled numerous cases both as a district attorney and a district judge prior to the termination hearing. However, because several attorneys had represented the State throughout the proceedings, Judge Gibbons had represented the State in 1993, and the termination hearing

was not held until 1996, it is likely that Larry genuinely did not remember Judge Gibbons from the earlier proceedings.

Therefore, we conclude that it would be inequitable to hold that the motion had to be filed twenty days prior to the date set for trial when the disqualifying information was not available to Larry's counsel at that time. However, we caution that these are very unique circumstances and that litigants should make all efforts to file disqualification motions in compliance with NRS 1.235.

We also conclude that Judge Gibbons had acted previously as a district attorney in the same action or proceeding. NRS 1.230(2) states:

> 2.   A judge shall not act as such in an action or proceeding when implied bias exists in any of the following respects:
>
> . . . .
>
> (c) When he has been attorney or counsel for either of the parties in the particular action or proceeding before the court.

The evidence clearly indicated that Judge Gibbons had acted in the criminal neglect case and Larry's first 432B hearing. We conclude that these proceedings involved many of the same issues presented in the parental termination hearing, and that those proceedings are properly considered the "same action or proceeding" as the parental termination case. Therefore, we conclude that Judge Gamble should have granted the motion to disqualify Judge Gibbons.

In so doing, we expressly indicate that we find no fault in Judge Gibbons' failure to remember what were obviously brief appearances in criminal and protective custody proceedings involving Larry, or in Judge Gibbons' refusal to disqualify himself when he truly believed he was not disqualified and could be fair and impartial. In fact, we have held that a judge has an obligation to sit in such circumstances. *See* In re Petition to Recall Dunleavy, 104 Nev. 784, 769 P.2d 1271 (1988). But for NRS 1.230(2) and our interpretation of it, we would have agreed with Judge Gamble that Judge Gibbons was not disqualified to hear this parental termination case.

## CONCLUSION

We conclude that the district court erred in denying Larry's motion to disqualify Judge Gibbons. Therefore, we reverse the order terminating Larry's parental rights and remand this case to the district court for a new termination hearing before a different judge.