(Nos. 68903, 68925 cons.—

KATHLEEN O'HARA, Appellee, v. HOLY CROSS HOSPITAL *et al.*, Appellants.

*Opinion filed May 23, 1990.—Rehearing*
*denied October 1, 1990.*

334

MILLER, J., joined by RYAN, J., specially concurring.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Mary Tobin and Gerald Haberkorn, of counsel), for appellant Holy Cross Hospital.

Sweeney & Riman, Ltd., of Chicago (Mary Jo Connelly, of counsel), for appellant Emergency Medicine, S.C.

David L. Poindexter, of Holstein, Mack & Klein, of Chicago, for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Kathleen O'Hara, brought a negligence action against, amongst others, Holy Cross Hospital

(Holy Cross) and Emergency Medicine, S.C. (Emergency Medicine). The circuit court granted Emergency Medicine's motion for summary judgment on the basis that it did not owe plaintiff a duty of due care, and plaintiff appealed. During the pendency of that appeal, the circuit court granted Holy Cross' motion for summary judgment on the same grounds and plaintiff again appealed. The appellate court consolidated the causes and reversed the orders of the circuit court (185 Ill. App. 3d 694). We allowed defendants' petitions for leave to appeal (107 Ill. 2d R. 315), and also consolidated the causes on appeal.

The sole issue presented for review is whether defendants owed plaintiff, a nonpatient bystander in the emergency room of a hospital, a duty to protect her from the injuries sustained herein.

Plaintiff alleged the following facts in her complaint. On February 28, 1982, plaintiff brought her 11-year-old son to the emergency room of Holy Cross Hospital for treatment of a facial laceration. The nurse invited plaintiff to accompany her son into the emergency room. During the course of the treatment, plaintiff wiped Novocain from her son's mouth. Soon thereafter, plaintiff fainted, hit her head and subsequently suffered necrosis of brain cells in the area of the injury.

Plaintiff alleged that defendants owed her a duty of due care. She further alleged that defendants breached that duty by: allowing her to remain in the emergency room when defendants knew or should have known that she was susceptible to fainting; requesting and allowing her to wipe Novocain from her son's mouth; and failing to staff the hospital adequately so that it would not have been necessary to request her to participate in the care of her son.

Holy Cross leased the operation of its emergency room to Emergency Medicine. Under the terms of the

agreement, Emergency Medicine provided the emergency room physicians and Holy Cross provided the nurses, administrative personnel, space and equipment. Plaintiff alleged that the relationship between Holy Cross and Emergency Medicine was that of principal and agent, and that Dr. Max Koenigsberg, the emergency room physician, was an employee of Emergency Medicine.

In her deposition, plaintiff testified that the nurse invited her to enter the emergency room with her son. Plaintiff further testified that Dr. Koenigsberg asked her to take a piece of gauze and wipe the Novocain from her son's mouth while the nurse lifted the covering from her son's face. Plaintiff stated that after wiping her son's mouth, she turned around and fainted. She further testified that she had never fainted before.

In his deposition, Dr. Koenigsberg testified as follows: it was hospital policy to allow one person to remain with the patient and customary to assign one nurse to that patient; he asked plaintiff to sit in the waiting room, but she refused and insisted on remaining with her son; plaintiff informed him that she had previously seen suturings performed on her other child and assured him that she would not become ill; he therefore asked plaintiff to place herself in a position away from her son, but she refused and insisted on standing near him. Dr. Koenigsberg further stated that the anesthetic began to run from the patient's mouth and plaintiff attempted to wipe it. He instructed her not to do so because of the "risk of infection" and gave her a sterile towel with which to wipe her son's mouth. Dr. Koenigsberg then testified that after the anesthetic took effect, he began suturing the wound, at which point plaintiff moved away and fainted.

The circuit court granted defendants' motions for summary judgment, holding that they did not owe plain-

tiff a duty of due care. On appeal, the appellate court implicitly found that defendants owed plaintiff a duty of due care and held that the circuit court erred in granting summary judgment because a genuine issue of material fact existed.

A complaint for common law negligence must set forth the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from that breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541.) A duty is an obligation to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554.) The existence of a duty is an issue of law that must be resolved by the court. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18-19.) If the court finds that the defendant owes no duty of due care to the plaintiff, the defendant is entitled to summary judgment as a matter of law. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 27.

Defendants argue that they did not owe plaintiff a duty of due care. Defendants point out that the question of whether a duty is owing depends upon the nature of the relationship between the parties (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374), and emphasize that the relationship between them and plaintiff was not one of physician and patient. Defendants also argue that they did not owe plaintiff a duty because it was not reasonably foreseeable that she would faint and public policy does not support the imposition of a duty to protect a nonpatient from fainting.

Plaintiff argues that defendants owed her a duty of due care. Although plaintiff was not a patient, she argues that defendants owed her a duty based on the "special relationship" between herself and her son. Plaintiff further argues that even if defendants did not owe her a duty based on the special relationship, they owed her a

duty because they took the initiative of inviting her into the emergency room and asking her to wipe her son's mouth. Plaintiff asserts that under these circumstances it was reasonably foreseeable that she would faint.

As plaintiff was a nonpatient bystander and not a patient, the first question to be addressed is whether defendants owed plaintiff a duty of due care based on the "special relationship" between herself and her son, who was a patient. Defendants argue that the "special relationship" rule set forth in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, and *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, is not applicable to this case. Plaintiff asserts that this rule does apply. We agree with defendants.

In *Renslow*, the court held that defendants owed a child, who was not yet conceived when the negligent acts were committed, a duty of due care. (*Renslow*, 67 Ill. 2d at 359.) Defendants negligently transfused the child's mother with Rh-positive blood, which was incompatible with the mother's Rh-negative blood. Her condition was not discovered until her pregnancy several years later. The child was born prematurely and suffered permanent injuries. (67 Ill. 2d at 349-50.) The court found that it was reasonably foreseeable at the time of the blood transfusion that she would eventually become pregnant and give birth to a child who would suffer injuries as a result of the improper transfusion. Although the child was not yet conceived at the time of the negligent acts, defendants owed her a duty based on the "intimate relationship" between child and mother. 67 Ill. 2d at 356-57.

In *Kirk*, the court held that a physician did not owe a nonpatient, who was a passenger in the car driven by the physician's patient, a duty of due care. (*Kirk*, 117 Ill. 2d at 531.) The physician failed to warn his patient that the drug prescribed to him could diminish his physical

and mental abilities. After ingesting the drug, the patient was involved in an automobile accident which resulted in an injury to the nonpatient. The court found that the physician did not owe the nonpatient a duty, because there was neither a physician-patient relationship between them nor a "special relationship" between the patient and the nonpatient. 117 Ill. 2d at 531.

Plaintiff misapprehends the "special relationship" rule set forth in *Renslow* and *Kirk*. In both cases, defendants acted negligently towards their patients and the nonpatients suffered injuries as a result. The issue presented was whether the duty that was owed to the patient *transferred* to the nonpatient based on the special relationship between the patient and the nonpatient. In the case at bar, plaintiff did not allege that defendants acted negligently towards their patient, the 11-year-old boy, and her injuries were in no way related to any negligent act directed towards the patient. Hence, the "special relationship" rule does not apply to this case.

Although defendants did not owe plaintiff a duty based on the "special relationship" rule, the question remains whether defendants owed a duty to plaintiff, a nonpatient bystander, to protect her from fainting. The question of whether a legal duty exists is contingent upon a variety of factors, and the weight accorded each factor depends upon the circumstances of each case. (See generally M. Polelle & B. Ottley, Illinois Tort Law 396-403 (1985).) First, the risk of harm must have been foreseeable. (*Dowler v. New York, Chicago & St. Louis R.R. Co.* (1955), 5 Ill. 2d 125, 132.) Mere foreseeability, however, is not enough. The risk of harm must have been "reasonably foreseeable." (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376.) Because hindsight makes virtually every occurrence foreseeable, the court must also consider the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of plac-

ing that burden on the defendant. (*Lance v. Senior* (1967), 36 Ill. 2d 516, 518; *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526.) Finally, the court must take into account the public policy and social requirements of the time and community. *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 357-58; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 545.

Applying these standards to the issue in this case, we find that an emergency room of a hospital does not have a duty to protect a nonpatient bystander from fainting by virtue of the fact that the nonpatient is allowed to enter the emergency room and remain with the patient during treatment. An emergency room of a hospital does, however, have a duty to protect a nonpatient from fainting once the nonpatient is invited to participate in the care and treatment of the patient.

First, an emergency room of a hospital does not have a duty to protect a nonpatient bystander from fainting while that person accompanies the patient into the emergency room. Although we agree with plaintiff that it is reasonably foreseeable a nonpatient bystander could faint, none of the remaining factors support the imposition of a duty to protect a mere bystander from fainting.

In his deposition, Dr. Koenigsberg admitted it is foreseeable that a bystander could become ill by viewing emergency room procedures. Dr. Koenigsberg testified that he asked plaintiff to leave the emergency room so that this type of situation would not take place. Although such an occurrence was reasonably foreseeable, the likelihood that a bystander would faint is minimal. Not all people are susceptible to fainting and common sense suggests that those who are would avoid emergency room situations. Moreover, there is nothing in the pleadings, affidavits or depositions that lends any cre-

dence to plaintiff's allegation that defendants knew or should have known she was susceptible to fainting.

More importantly, the burden of guarding against such an occurrence and the consequences of placing that burden on an emergency room are enormous. Once a nonpatient is allowed to enter the emergency room, the emergency room personnel would then have to take steps to protect that person from becoming ill. This task would be difficult, if not impossible, to achieve because there is no way to eliminate the gruesome sights and sounds inherent in an emergency room setting. Even if the emergency room attempts to protect a nonpatient from fainting, a portion of its attention would shift from the patient to the nonpatient, which would diminish the care provided to the patient. Furthermore, even if the emergency room takes precautions to protect the nonpatient, that person could still faint if susceptible to doing so. Therefore, the only practical way of protecting nonpatients would be to bar them from emergency rooms entirely. This result would be undesirable because nonpatients oftentimes can help reduce a patient's anxiety, offer the patient comfort, consolation and support, and reduce their own anxiety by becoming aware of the condition and treatment of the patient. The primary function of the emergency room is to treat patients. Placing a duty on the emergency room to protect nonpatient bystanders from fainting would erode its primary function.

In addition, the public policy and social requirements of our era do not support the imposition of such a duty. In *Bernier v. Burris* (1986), 113 Ill. 2d 219, we recognized that the legislature's purpose in enacting a comprehensive medical malpractice law was to reduce the burden existing in the health care professions as a result of the perceived medical malpractice crisis. Placing a duty on emergency rooms to protect nonpatient by-

standers from fainting is contrary to the policy of reducing the burden existing in the health care professions.

An emergency room of a hospital does, however, have a duty to protect a nonpatient from fainting once she is invited to participate in the care and treatment of the patient. As noted above, it is reasonably foreseeable that a nonpatient bystander could become ill by viewing emergency room procedures. This occurrence is even more foreseeable when that person shifts from bystander to participant in the care and treatment of the patient. Once the nonpatient becomes actively involved in the emergency room procedures, the likelihood that that person would become ill increases. Furthermore, the burden of guarding against this occurrence and the consequences of placing that burden on an emergency room are minimal, because an emergency room should not have to enlist the aid of a nonpatient bystander. See *Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 397 (participant in a football game owed a duty to bystander to refrain from playing in a crowded area because it was foreseeable and likely a collision would occur and the burden of playing in a noncongested area was minimal).

It is a well-settled principle of law that every person owes a duty to all others to exercise ordinary care to guard against injuries which naturally flow as a reasonably foreseeable consequence of an act. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 390; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 86.) Although it may be beneficial to allow a nonpatient into the emergency room to accompany the patient, it is unnecessary to have that person actively participate in the emergency room procedures. Under these circumstances, it is consistent with public policy to place a duty on an emergency room to protect a nonpatient from fainting once that person is invited to participate in the care and treatment of the patient.

Having concluded that an emergency room of a hospital has a duty to protect nonpatients from fainting once they are invited to participate in the care and treatment of the patient, the question remains whether defendants invited plaintiff to participate in the care and treatment of her son. This question is one of fact that must be resolved by the trier of fact. Accordingly, the circuit court should not grant a motion for summary judgment unless "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) In determining whether a genuine issue of material fact exists, the court must consider the pleadings, depositions, admissions, exhibits and affidavits on file and construe them strictly against the movant and liberally in favor of the opponent. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.

In the case at bar, plaintiff testified that the nurse invited her to remain with her son during the emergency room procedures, and Dr. Koenigsberg testified that it was hospital policy to allow a bystander to remain with the patient. Plaintiff also stated that the doctor asked that she assist in the procedures by wiping the anesthetic from her son's mouth and, after doing so, she turned around and fainted. Dr. Koenigsberg testified that plaintiff began to wipe the anesthetic from her son's mouth of her own accord; he stopped her and gave her a sterile towel with which to wipe her son's mouth. Dr. Koenigsberg also stated that plaintiff did not faint until he began suturing the wound. Considering these facts, it is evident that there was a genuine issue of material fact as to whether defendants invited plaintiff to participate in the care and treatment of the patient. Therefore, the

circuit court erred in granting defendants' motions for summary judgment.

For the reasons set forth above, the judgment of the appellate court is affirmed.

*Appellate court
judgment affirmed.*

JUSTICE MILLER, specially concurring:

I agree with the majority that the circuit court erred in entering summary judgment in favor of defendants Holy Cross Hospital and Emergency Medicine, S.C., the entity that provided emergency room services at Holy Cross. I do not agree with the majority's rationale for that result, however, and therefore I write separately.

Emergency Medicine and Holy Cross argue that they had no duty to protect the plaintiff from the accident that occurred here. In support of that contention, they insist that it was not reasonably foreseeable that the plaintiff would faint and that requiring health care providers to prevent this sort of occurrence would be unreasonably burdensome. I agree with the majority that a question of fact was raised in the proceedings below and that summary judgment in favor of the two defendants involved in the present appeal was therefore improper. In allowing a portion of the plaintiff's action against these two defendants to proceed, however, the majority distinguishes between nonpatients who are mere bystanders and nonpatients who participate in some manner in the medical procedure. I do not agree that the scope of the defendants' duty in this regard may properly depend on whether the nonpatient is a mere bystander or a participant in the medical procedure.

The majority notes that the defendants owed to the plaintiff the duty to exercise ordinary care to prevent injuries occurring as the reasonably foreseeable consequences of their actions. (See *Scott & Fetzer Co. v.*

*Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 390; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 86.) In determining that the present defendants could not have been in breach of a duty they owed to a mere bystander, the majority exaggerates the consequences that it fears would result from finding liability in those circumstances. To succeed in an action for negligence, a plaintiff must establish the existence of a duty, breach of the duty, and damages proximately caused by the breach. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374.) Imposition of a duty does not by itself establish breach of the duty; to say that a duty is owed says nothing about the manner in which that duty may be fulfilled or violated in a particular case.

It bears noting that Dr. Koenigsberg, the emergency room physician, stated in his discovery deposition that, in accordance with custom, he asked the plaintiff to remain outside in the waiting room while her son was being tended to in a nearby treatment room. Dr. Koenigsberg explained that such a practice is ordinarily followed to avoid the type of problem that occurred here. Dr. Koenigsberg also stated that once the plaintiff insisted on entering the treatment room, he advised her to position herself in such a way that her risk of injury would be minimized if she did in fact become ill. Thus, contrary to the majority's reasoning, the emergency room physician certainly recognized that the possibility of illness in a nonpatient who is present during medical treatment exists regardless of whether the person is a mere bystander or an active participant.

"After the event, hindsight makes every occurrence foreseeable, but whether the law imposes a duty does not depend upon foreseeability alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also be taken into account." (*Lance v.*

*Senior* (1967), 36 Ill. 2d 516, 518.) Dr. Koenigsberg's deposition testimony demonstrates that the medical community realizes the risk of the harm that allegedly occurred here and the manner in which an occurrence of that sort may be avoided. The majority opinion offers no persuasive reason for confining the scope of such a duty to nonpatient participants, and thus I do not agree with the majority's conclusion that imposition of the duty asserted here should turn on the supposed distinction between bystanders and participants.

I question, as a final matter, the majority's suggestion that a hospital or similar health care provider will be strictly liable for fainting-related injuries once it is established that the nonpatient was asked to take part in the medical procedure. (See, *e.g.*, 137 Ill. 2d at 343 ("Having concluded that an emergency room of a hospital has a duty to protect nonpatients from fainting once they are invited to participate in the care and treatment of the patient, the question remains whether defendants invited plaintiff to participate in the care and treatment of her son").) The defendants' duty, rather, is to exercise due care; it may be breached by conduct that induces a person to faint. As I have indicated, such a breach may, in appropriate circumstances, be found with respect to nonpatient bystanders as well as to participants. Inviting the participation of a bystander is simply evidence that may show a breach of the duty.

JUSTICE RYAN joins in this special concurrence.