[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case requires the court to determine whether a duty to assist devolves upon a hospital when a patient's visitor, observing a procedure in patient's room, pronounces that she is about to faint.
Plaintiffs Anne Marie and John Murillo have filed a two count complaint against Griffin Hospital regarding injuries said to have been sustained as a result of Ms. Murillo's fainting and falling on July 15, 1999. in the hospitals preparation/recovery room. Ms. Murillo was accompanying her sister who was awaiting surgery and she apparently witnessed multiple efforts to establish an intravenous line and then allegedly expressly informed the defendant's employees present that she was going to pass out. Further, the patient also told the employees that her sister felt faint. The plaintiff then fainted and fell, injuring herself. (The case does not involve allegations of negligence regarding any care providedafter the fall).
Count one alleges negligence, stating that the repeated efforts created an unreasonable risk of injury and breached a duty to obviate such risk. Count two is the consortium complaint of plaintiff's husband. Defendant seeks to strike both counts.
The defendant moves to strike count one on the ground that the CT Page 13579 complaint is legally insufficient because the defendant owed no duty of care to this plaintiff. Specifically, the defendant argues first that the plaintiffs fail to viably assert that it created an unreasonable risk to Ms. Murillo by either allowing her to be present in the room, not escorting her out after she informed of feeling faint, or continuing the procedure while she was present.[1] Second, the defendant asserts that public policy bars recognition of a legal duty between a hospital and non-patients under such circumstances, because such a duty would require the hospital to divide its care between patients and non-patients.
In opposition, the plaintiff's state that when the hospital realized its actions created an imminent danger of injury, it had a duty to prevent its occurrence. The plaintiffs also maintain that the defendant owed a duty of care to the plaintiff regardless of whether the defendant's underlying conduct, performing the procedure. was tortious or innocent.[2]
The plaintiffs rely on § 321 of the Restatement (Second) of Torts.[3] asserting that the staff present was award of plaintiff's faintness because both she and her sister informed them of this fact. In addition, the plaintiffs argue that because of this knowledge, the defendant had a duty to prevent her from fainting or at least falling. This argument thus essentially claims that the defendant should have immediately deemed plaintiff to be apatient and attended to her immediately.
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation: and actual injury." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 566, 707 A.2d 15 (1998). "The existence of a duty of care is an essential element of negligence. . . . A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known. would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Internal quotation marks omitted.) Calderwood v. Bender, 189 Conn. 580, 584, 457 A.2d 313
(1983). "The existence of a duty is a question of law and [o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. (Internal quotation marks omitted.) RK Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 384, 650 A.2d 153 (1994).
The Connecticut Supreme Court, as well as courts in other jurisdictions, has adopted a two-step analysis for the finding of a legal duty of care. "The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245, CT Page 13580 250, 765 A.2d 505 (2001). There must be a "determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and . . . a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." Id., 250-51.
"Foreseeability of injury, however, in the absence of a duty to prevent the injury, is an insufficient basis on which to rest liability." Sacksv. Thomas Jefferson University Hospital, 684 F. Sup. 858, 860, aff'd,862 F.2d 310 (3d Cir. 1988). "Because hindsight makes virtually even occurrence foreseeable. the court must also consider the likelihood of injury. the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. . . . Finally, the court must take into account the public policy and social requirements of the time and community." (Citations omitted: internal quotation marks omitted.) O'Hara v. Holy Cross Hospital, 137 Ill.2d 332, 339-40,561 N.E.2d 18 (1990).
"[D]uty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . The problem for the law is to limit the legal consequences of wrongs to a controllable degree. (Internal quotation marks omitted.) Lombard v. Edward J. Peters,Jr., P.C., 252 Conn. 623, 633, 749 A.2d 630 (2000). There must be "a determination on the basis of a public policy analysis. of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) Mendillo v. Board of Education, 246 Conn. 456,484, 717 A.2d 1177 (1998).
Although no Connecticut case directly addresses the plaintiffs' argument that the hospital owed a duty of care once it knew that plaintiff felt faint, a similar argument was presented in Sacks v. ThomasJefferson University Hospital, supra, 684 F. Sup. 858. In Sacks, the plaintiff brought her daughter to the emergency room. Plaintiff was permitted to remain in the room while her daughter's wound was being sutured. and she held her daughter's head at the request of an employee. Plaintiff informed the staff that she felt faint, and fainted as she was leaving the room. The plaintiff argued that because the hospital permitted her to be present and asked her to hold her daughter's head. the hospital created a risk of harm to her and, consequently. had a duty to protect her. The plaintiff further argued that when she informed that she was going to faint. this was a request for medical attention, and she was owed a duty of treatment. CT Page 13581
With regard to the argument that the defendant had a duty because it had knowledge. the Sacks court noted that "[a]t no time did the hospital agree to, or undertake to, accept the plaintiff as a patient. nor was a physician-patient relationship ever established. Only the plaintiff's daughter was admitted to the defendant's emergency room. Mrs. Sacks voluntarily entered the treatment room. . . . By doing so, she accepted the risk that she would witness events or conditions inherent in the medical treatment which could upset her. She was not required to be present nor was she required to hold her daughter's head." Id., 860. As inSacks, there is no allegation here that the defendant agreed to undertake plaintiff as a patient, nor could such a claim be taken seriously, given the apparent speed of events. Any such agreement to treat this visitor as a patient-like individual would have to be one the law would dictate.
In O'Hara v. Holy Cross Hospital, supra, 137 Ill.2d 335, the plaintiff, with her son in the emergency room, fainted after observing a surgical procedure. The court found that the plaintiff's injury was not foreseeable and stated that, "[n]ot all people are susceptible to fainting and common sense suggests that those who are would avoid emergency room situations." Id., 340. Most importantly, however, the court did not recognize a duty of care for public policy reasons. The court held, "an emergency room of a hospital does not have a duty to protect a nonpatient bystander from fainting by virtue of the fact that the nonpatient is allowed to enter the emergency room and remain with the patient during treatment." Id. "[T]he burden of guarding against such an occurrence and the consequences of placing that burden on an emergency room are enormous." Id. "[P]ublic policy and social requirements of our era do not support the imposition of such a duty." Id., 341.
In Walters v. St. Francis Hospital, 23 Kan. App. 2d 595, 95-96 939 P.2d 1041 (1997), the plaintiff, who accompanied his fiancee during her treatment. fainted and was injured after witnessing a procedure. The plaintiff had informed the staff that he was not feeling well and, while standing at the nurses' station, lost consciousness and fell. The plaintiff argued the hospital had a duty to warn him that he might faint and to assist after he indicated he was not feeling well. The court held that the "possibility of becoming queasy or fainting from witnessing a medical procedure . . . is a danger that is open, obvious, and known . . . The myriad of possible adverse reactions of an individual accompanying another to the hospital are not within the knowledge of the hospital. A contrary conclusion could open hospitals to claims that would cause hospitals to bar all visitors during all treatments." Id., 601.
Hence, three foreign jurisdictions have held that a hospital does not have a duty of care in similar settings,[4] and declined to recognize a CT Page 13582 cause of action for reasons largely based on public policy. Some also rely upon perceived foreseeability problems. This court does not feel comfortable with heavy reliance upon foreseeability difficulty, due to the clearer, and dual, advance protestation that plaintiff would faint. These events have a tendency to shrink foreseeability issues in the equation. Analysis is better served with a centered focus on public policy.
In Connecticut, as a consequence of public policy considerations, "common-law cases have shielded professional decision making from the complaints of third parties when third party intervention carried with it a substantial risk of interference with the primary purpose of the professional consultation." Jacoby v. Brinckerhoff, 250 Conn. 86, 97,735 A.2d 347 (1999). In Jacoby, the court stated that public policy dictated that "a psychiatrist's treatment of a troubled spouse should not be burdened by accountability to the other spouse." The present case involves. in an oblique sort of way. third party "intervention" in a professional decision-making scenario. where such might jeopardize the patient's treatment. Accordingly, public policy would suggest that the hospital provide an undivided duty of care to its patients without visitor concerns compromising this duty.
In Maloney v. Conroy, 208 Conn. 392, 403, 545 A.2d 1059 (1988), as reaffirmed by Mendillo v. Board of Education, supra, 246 Conn. 456, the plaintiff sought damages for negligent infliction of emotional distress caused by the alleged medical malpractice in the treatment of her mother. The court precluded recovery based on public policy and stated that "[m]edical judgments as to the appropriate treatment of a patient ought not to be influenced by the concern that a visitor may become upset from observing such treatment . . . The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients." Maloney v. Conroy,
supra, 208 Conn. 403. Hence, the court denied recovery to a non-patient bystander in a situation of alleged medical malpractice. In the present case, where medical malpractice is not even alleged, it would seem anomalous to impose liability to a third party.
The Murillos rely primarily on § 321 of the Restatment (Second) of Torts in urging a legal duty of care.[5] Section 321 sets forth scenarios in which the rule would provide for a duty of care. Said scenarios involve fact patterns where it is undisputed that a party's actions or failure to act created an unreasonable risk of injury to another.[6] Here, although the hospital might be said to have known that the plaintiff felt faint, knowledge in itself does not necessarily mandate a finding that the defendant's conduct created an unreasonable CT Page 13583 risk of injury. As O'Hara indicated the likelihood of a bystander fainting was minimal because not all people are susceptible to fainting and common sense dictates that those who are would most likely avoid emergency room settings or timely avert their own endangerment.
The pivotal factor here in considering imposing a duty is not so much the foreseeability of the risk, although it would be more relevant, possibly, in cases where no warning issued. but whether public policy supports recovery. Public policy does not favor recognition of a duty to the visitor under these facts.
A hospital ought not have to suffer potential liability to the visitor whose sudden surprise distress would compete for attention with the staffer's clearer duties to the patient. There are situations, of course, where a hospital's duty may arise in a flash. A gurney being wheeled into the emergency room from an ambulance comes to mind. There, the duty is traditional and planned for. The occasional observer who becomes distressed cannot lay claim to the same response. Again, it is well to keep in mind, as noted, that the center of this dispute is not post-injury care. but whether the hospital may be liable for not preventing the occurrence.
Upon this rationale, plaintiff-visitor's complaint must be stricken and with it, obviously . . . her husband's consortium claim.
Nadeau, J.