(Nos. 104861, 104876 cons.—

BRENDA TEDRICK, as Adm'r of the Estate of Teresa Street, Deceased, *et al.*, Appellees, v. COMMUNITY RESOURCE CENTER, INC., *et al.*, Appellants.

*Opinion filed September 24, 2009.—Rehearing denied November 23, 2009.*

Hinshaw & Culbertson LLP, of Chicago (Stephen R. Swofford, Jeffrey M. Glass and Christine Olson McTigue, of counsel), for appellants James R. Goggin *et al.*

Cassiday Schade LLP, of Chicago (Brian J. Hickey, Mark A. Sansone and Brian Albert Schroeder, of counsel), for appellants Community Resource Center, Inc., *et al.*

Christian G. Montroy, of East St. Louis, and James Buchmiller, of Greenville, for appellees.

Richard R. King II and Robert John Kane, of Springfield, for *amicus curiae* Illinois State Medical Society.

Kirsten M. Dunne, of Goldberg Weisman Cairo, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE KARMEIER delivered the judgment of the court, with opinion.
Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.
Chief Justice Fitzgerald took no part in the decision.

## OPINION

The plaintiffs, Brenda Tedrick, administrator of the estate of Teresa Street, deceased, and Brenda Tedrick and James Tedrick, guardians of the estates of Dalton Ryan Street and Dylan Bryce Street, minors, brought this action seeking damages resulting from the death of Teresa Street, who was killed by her husband, Richard Street, on June 9, 2003. The complaint contains 20 counts sounding in wrongful death or survival against 10 health-care providers, including physicians, psychologists, social workers and their employers. The defendants are alleged to have negligently provided Richard with medical care over a period of time from May 13, 2003, until June 6, 2003, that defendants had a duty and failed to warn Teresa of, and protect her from, Richard's threats and potential violent acts, and further that defendants' alleged negligence was transferred to Teresa. Defendants filed motions to dismiss plaintiffs' complaint pursuant to section 2—615 and section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 2002)). They argued that no duty was owed by them because, under Illinois law, the duty of care of a health-care professional runs only to the patient and not to nonpatient third parties citing *Doe v. McKay*, 183 Ill. 2d 272 (1998).

The circuit court of Marion County dismissed the third amended complaint finding that plaintiffs failed to allege a recognized duty by any named defendant to Teresa or any special relationship recognized by existing Illinois authority such as to allow the transfer of negligence to Teresa. The appellate court held the third amended complaint set forth sufficient factual allegations to establish a cause of action based on theories of a voluntary undertaking and transferred negligence and reversed that part of the trial court judgment which held to the contrary. It affirmed that part of the trial court judgment that held the third amended complaint did not

state a cause of action based on section 315 or any of the other special relationship exceptions to section 315 of the Restatement (Second) of Torts (Restatement (Second) of Torts §§315 through 319 (1965)) and also affirmed the trial court's denial of plaintiffs' request for reimbursement of attorney fees and costs they incurred because a doctor refused to answer certain questions during a discovery deposition.[1] The appellate court then reinstated the third amended compliant in its entirety and remanded the cause to the trial court for further proceedings. 373 Ill. App. 3d 761.

We granted the separate petitions for leave to appeal of each of two groups of defendants and consolidated them for our review. 210 Ill. 2d R. 315. In addition, we allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiffs and the Illinois State Medical Society to file an *amicus curiae* brief in support of the defendants. For the reasons that follow, the judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court is affirmed.

### Procedural Background

The defendants filed motions to dismiss under sections 2—615 and 2—619 and did not specify what argument was made under which section. Plaintiffs filed a combined response to the motions to dismiss of all defendants. Like defendants, plaintiffs did not specify which arguments were made under sections 2—615 and 2—619. The trial court did not note in its order dismissing the complaint whether the dismissal was granted under section 2—615 or section 2—619. The appellate court stated: "[W]e conclude that the third amended complaint sets forth sufficient factual allegations to

---

[1]The plaintiffs have not cross-appealed that part of the appellate court judgment affirming the circuit court.

establish a cause of action based on theories of a voluntary undertaking and transferred negligence and that the trial court erred in dismissing the action. \*\*\* We caution that this appeal is limited to the legal sufficiency of the complaint for purposes of a motion to dismiss under section 2—615 of the Code of Civil Procedure." 373 Ill. App. 3d at 772.

Many facts, occurrences, and conversations were uncovered during discovery, which was ongoing while the motions to dismiss were pending, and were used by the parties to argue for and against the motions to dismiss. This resulted in a 10-volume record containing 2,135 pages. The briefs of plaintiffs, each group of defendants and the appellate court opinion discussed many of these facts, occurrences and conversations that are outside of the allegations of the third amended complaint. We believe that it is appropriate to decide this case on the motion filed under section 2—615 and, therefore, limit our review to the legal sufficiency of the third amended complaint and the allegations of fact contained therein. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469 (1994).

## The Third Amended Complaint

As mentioned earlier, the complaint contains 20 counts sounding in wrongful death or survival against 10 health-care providers, including physicians, psychologists, social workers and their employers. Except for times, places, and defendants, the allegations against all of the defendants are essentially the same and are as follows: that Richard was lawfully married to Teresa; that he had paranoid delusions that his wife was committing adultery and that she was trying to poison him; that he had thoughts of killing his wife and that he threatened to kill her; that Richard "retained the services" of defendants for "psychiatric care," for his "physical, psychological and emotional condition," or for "physical, psychiatric and emotional care," and that defendants

"knew or should have known" of Richard's paranoid delusions and his thoughts and threats of killing his wife; that it was reasonably foreseeable to defendants that Richard would injure and/or kill his wife and that defendants knew and/or should have known that Richard posed a specific threat of harm to his wife; that defendants undertook, either gratuitously or for consideration, to render services to Richard which defendants recognized or should have recognized as necessary for the protection of Teresa and that Teresa relied upon defendants' undertaking, assuming that they would appropriately evaluate, treat and supervise Richard, warn Teresa, and all others to whom Richard posed a threat of harm, warn the appropriate authorities of the threat posed by Richard, and hospitalize and/or otherwise control him; that defendants' duties included the duty of ordinary care, the duty of professional care, the duty to protect Teresa, the duty to supervise the treatment and condition of Richard, and the duty to control Richard; that defendants provided substandard care to Richard by failing to properly diagnose, treat, and monitor Richard's physical, psychological and emotional condition, by failing to warn Teresa and the police and by failing to hospitalize and/or otherwise control Richard.

There is no allegation in the third amended complaint that Teresa was a patient of any of the defendants except for a conclusory allegation that James R. Goggin, M.D., was a family practice physician and that Teresa was his patient. This allegation is out of context with the other allegations of the two counts against Dr. Goggin, the other counts of the complaint and the arguments of the parties pertaining to a duty of care to a nonpatient third party.

### Standard of Review

A section 2—615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent

on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Therefore, we review *de novo* an order granting or denying a section 2—615 motion. *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004). We also construe the allegations in the complaint in the light most favorable to the plaintiff. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005). Given these standards, a cause of action should not be dismissed, pursuant to a section 2—615 motion, unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Canel v. Topinka*, 212 Ill. 2d 311, 318 (2004). However, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action. *Marshall*, 222 Ill. 2d at 429-30.

## ANALYSIS

Defendants argue that under Illinois law a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship between the patient and the plaintiff citing *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507 (1987), and *Doe v. McKay*, 183 Ill. 2d 272 (1998). In *Kirk* plaintiff sought to recover damages for injuries he sustained while he was a passenger in a vehicle operated by a patient who had been recently released from a hospital. Prior to the discharge, the patient had taken prescription psychiatric medication. Shortly after leaving the hospital, the patient consumed alcoholic beverages and then drove into a tree. Plaintiff filed suit against the doctor who prescribed the medication, alleging the doctor failed to warn the driver of the medication's side effects. The *Kirk* court considered decisions from a number of foreign jurisdictions, the social and public policy of Illinois, and this court's own

holdings, and concluded that "the preferable view, and the one consistent with this court's holdings and with legislation based on social and public policy, is that a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship, as present in *Renslow*,[2] between the patient and the plaintiff." *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d at 531.

In *Doe* the defendant psychologist treated the plaintiff's daughter. Plaintiff alleged the defendant induced his daughter into falsely believing plaintiff had sexually abused her when she was a child. The plaintiff further alleged that the defendant's treatment of his daughter deprived him of his daughter's society and companionship and resulted in an intentional interference with the parent-child relationship. The *Doe* court affirmed the trial court's dismissal of the case, stating "[T]his court recognized in *Kirk*, the duty of care owed by a health care professional runs only to the patient, and not to third parties." *Doe v. McKay*, 183 Ill. 2d at 279. The court then discussed at length the problem of divided loyalties and the strong public interest in maintaining the confidentiality of therapist-patient communications. *Doe v. McKay*, 183 Ill. 2d at 281-84. The *Doe* court, in following the ruling in *Kirk*, concluded that the problem of divided loyalties and the concerns about compromising patient confidentiality, "argue strongly against imposing on therapists a duty of care toward nonpatients." *Doe v. McKay*, 183 Ill. 2d at 284.

Voluntary Undertaking

Plaintiffs argue that the voluntary undertakings of the defendant mental-health-care providers created a

---

[2]The "special relationship" in *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348 (1977), is discussed under the heading "Transferred Negligence" later in this opinion.

duty to protect Teresa irrespective of a patient-physician relationship or special relationship between the patient and a third party. They contend that the defendants owed a duty to warn and to protect Teresa against potential violent acts of her husband pursuant to section 324A of the Restatement (Second) of Torts (Restatement (Second) of Torts §324A (1965)). This court in *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 210-11 (1979), adopted section 324A of the Restatement (Second) of Torts, which concerns "Liability to Third Person for Negligent Performance of Undertaking." See also *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 390 (1986). Plaintiffs assert that the Illinois appellate court has repeatedly held that the duty that arises from a voluntary undertaking exists in the absence of a patient-physician or a special relationship.

Section 324A provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of *a third person* or his things, is subject to liability to *the third person* for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphases added.) Restatement (Second) of Torts §324A (1965).

Plaintiffs contend that they properly pleaded defendants' duty to protect Teresa under section 324A of the Restatement (Second) of Torts. In support of this contention plaintiffs argue that they pleaded that defendants undertook, either gratuitously or for consideration, to render services to Richard which defendants recognized or should have recognized as necessary for the protection of Teresa; that Teresa relied upon defendants' undertak-

ing, assuming that defendants would appropriately evaluate, treat and supervise Richard, warn Teresa and all others to whom Richard posed a threat of harm, warn the appropriate authorities of the threat posed by Richard, and hospitalize and/or otherwise control Richard; and that defendants were negligent for failing to perform the aforementioned acts, that Teresa suffered harm, and that her injuries were proximately caused by defendants' negligence.

Plaintiffs contend that under Illinois law, the duty to protect arises from a defendant's undertaking and that "Illinois appellate courts have repeatedly upheld the duty to protect against criminal acts pursuant to section 324A of the Restatement (Second) of Torts." In support of this contention they cite *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204 (1979), *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203 (1988), and *Hernandez v. Rapid Bus Co.*, 267 Ill. App. 3d 519 (1994). They also argue that Illinois courts have repeatedly held that the duty to protect against third-party criminal acts arises from a defendant's undertaking, despite the fact that no special relationship may exist. Plaintiffs cite *Pippin*, which they describe as "the seminal case for Section 324A under Illinois law," *Hernandez*, and *Siklas v. Ecker Center for Mental Health, Inc.*, 248 Ill. App. 3d 124 (1993), in support of this argument.

In *Pippin* the plaintiff was the mother of a child who was attacked and killed while visiting a Chicago Housing Authority (CHA) housing project. This court noted that a landlord such as the CHA ordinarily owes no duty to protect guests from a criminal attack and the case did not fall into the "special relationship" exception to the general rule.[3] *Pippin v. Chicago Housing Authority*, 78 Ill. 2d at 208. It found that the CHA had contracted with

---

[3]The general rule against imposing a duty is set out in Restatement (Second) of Torts §314 (1965) and is subject to four "special

a security company to provide guard services for CHA properties and persons thereon. Applying section 324A of the Restatement (Second) of Torts, this court held that the security company assumed the duty, owed to persons lawfully on the CHA property, of exercising reasonable care in the performance of its contracted obligation of protection of such persons.

In *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203 (1988), two women were attacked while working at 4 a.m. in their office in a large office park. One of the women and the family of one who died brought actions against the owners and managers of the office park. In the course of the opinion, the court stated that a landlord may be held liable for the criminal acts of third parties when it voluntarily undertakes to provide security measures, but performs the undertaking negligently and the negligence is the proximate cause of injury to the plaintiff citing *Pippin* and other cases. *Rowe v. State Bank of Lombard*, 125 Ill. 2d at 217. The *Rowe* court found that plaintiffs correctly asserted that the owners and managers, by retaining access to the individual office units, and manufacturing master and grandmaster keys to facilitate entry, assumed a duty to take reasonable precautions to prevent unauthorized entries by individuals possessing those keys. *Rowe v. State Bank of Lombard*, 125 Ill. 2d at 221.

In *Hernandez* the mother of a special education student filed an action on behalf of her daughter, against a school bus company, after being raped by a fellow bus passenger. Citing *Rowe*, the appellate court held that "even in the absence of one of the four special relationships, one may be held liable for the criminal acts of a third party under the theory of negligence in the

---

relationship" exceptions set out in section 314A, which are: (1) common carrier-passenger, (2) innkeeper-guest, (3) possessor of land-invitee, and (4) custodian-person in lawful custody.

performance of a voluntary undertaking." *Hernandez v. Rapid Bus Co.*, 267 Ill. App. 3d at 524.

The appellate court in this case discussed at length and relied principally on *Siklas v. Ecker Center for Mental Health, Inc.*, 248 Ill. App. 3d 124 (1993), in finding that the third amended complaint contains sufficient factual allegations regarding the defendants' assumption of a duty to warn Teresa about the violent propensities of her husband. 373 Ill. App. 3d at 769-70. In *Siklas* a patient brought a negligence action against the defendant, a mental health center. The plaintiff was a paranoid schizophrenic who was injured by his roommate when the roommate grabbed a knife and seriously injured plaintiff. The appellate court first stated that, generally, one does not owe a duty to protect another from criminal acts of third parties unless the plaintiff and defendant are in one of four special relationships as set forth in section 314A of the Restatement (Second) of Torts. None of those four special relationships applied as to plaintiff and defendant.

Plaintiff argued that defendant voluntarily undertook the duty to provide him with a compatible roommate and to monitor the living arrangements, mental status, and compatibility of both himself and the roommate. The *Siklas* court held that defendant had a duty to protect plaintiff, its patient, under section 323 of the Restatement (Second) of Torts, which reads:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts §323 (1965).

Here the appellate court observed: "While the *Siklas* appeal challenged the entry of a summary judgment, we find the discussion of the mental health center's duty to exercise reasonable care in performing services that it undertook for the protection of *a third party* to be helpful in our analysis ***." (Emphasis added.) 373 Ill. App. 3d at 770. However, *Siklas* did not involve protection of *a third party* under section 324A of the Restatement (Second) of Torts, but rather was decided under section 323 of the Restatement (Second) of Torts. Section 323 pertains to the liability of an actor to the one to whom he has undertaken to render services while section 324A deals with the liability of such an actor to third persons. See Restatement (Second) of Torts §324A, Comment *a* (1965).

None of the foregoing cases argued by plaintiffs involved a malpractice action by a nonpatient third party and are therefore distinguishable from the case before us.

Defendants have cited *Heigert v. Riedel*, 206 Ill. App. 3d 556 (1990), and *Britton v. Soltes*, 205 Ill. App. 3d 943 (1990), to support the view that a physician's duty should not be extended to nonpatient third parties. In *Heigert* plaintiff was a nurse who contracted tuberculosis from a patient. She filed an action against two doctors who had failed to properly diagnose the disease in a patient. After the court discussed section 324A of the Restatement (Second) of Torts and authorities from other states, it went on to discuss *Kirk* and held that plaintiff could not maintain the medical malpractice action absent a direct physician-patient relationship between the doctor and the plaintiff or a special relationship between the patient and the plaintiff. *Heigert v. Riedel*, 206 Ill. App. 3d at 563.

In *Britton* the situation was basically the same as *Heigert*. The *Britton* family alleged that the defendant

doctor failed to discover that Roger Britton had tuberculosis and that they contracted the disease from him. The *Britton* court declined to impose a duty, stating that *Renslow* and *Kirk* provide that a duty will be imposed only where the relationship between the patient and third party is such that the negligence to the patient necessarily results in injury to the third party. *Britton v. Soltes*, 205 Ill. App. 3d at 946-47.

Defendants also argue that under Illinois law, mere reliance by a third party on the performance of a duty owed to another is not sufficient to state a cause of action citing *Charleston v. Larson*, 297 Ill. App. 3d 540 (1998). In *Charleston*, a nurse at a hospital was attacked by a psychiatric patient and she sued the psychiatrist who had admitted the patient. Plaintiff alleged that the defendant had failed to properly treat the patient, failed to restrain the patient, and failed to warn her of the patient's dangerous propensities. She argued the defendant owed her a duty under the voluntary undertaking doctrine. The court found that plaintiff's voluntary undertaking theory of defendant's liability in this case fails at the outset because plaintiff never alleged that defendant undertook services for her but, rather, that defendant undertook to protect the patient. *Charleston v. Larson,* 297 Ill. App. 3d at 551.

Both the defendants and the plaintiffs cite *O'Hara v. Holy Cross Hospital*, 137 Ill. 2d 332 (1990), in support of their respective positions. Defendants contend the case holds that a physician owes a duty to the welfare of his patient and not to third parties, even foreseeable third parties, who may be affected by the treatment of the patient. Plaintiffs argue the case holds that health-care providers may be liable for breaching their duty to protect a third party even in the absence of both a patient-physician or a plaintiff-patient special relationship.

*O'Hara* was a medical malpractice case involving a nonpatient bystander who was injured in the emergency room of the hospital. The plaintiff's 11-year-old son was being treated in the emergency room of the hospital for a facial laceration. A nurse invited plaintiff to accompany her son into the emergency room. During the course of the treatment, plaintiff wiped Novocain from her son's mouth. Soon thereafter, plaintiff fainted, hit her head and subsequently suffered necrosis of brain cells in the area of the injury.

The sole issue in the case was whether defendants owed plaintiff, a nonpatient in the emergency room of a hospital, a duty to protect her from her injuries sustained therein. The trial court granted each defendant's motion for summary judgment on the basis that the defendant did not owe plaintiff a duty of due care, the appellate court reversed the orders of the circuit court and we affirmed the appellate court stating:

> "The primary function of the emergency room is to treat patients. Placing a duty on the emergency room to protect nonpatient bystanders from fainting would erode its primary function.
>
> ***
>
> An emergency room of a hospital does, however, have a duty to protect a nonpatient from fainting once she is invited to participate in the care and treatment of the patient." *O'Hara v. Holy Cross Hospital*, 137 Ill. 2d at 341-42.

This court then found that there was a genuine issue of material fact as to whether defendants invited plaintiff to participate in the care and treatment of the patient and therefore reversed the circuit court in granting motions for summary judgment. *O'Hara v. Holy Cross Hospital*, 137 Ill. 2d at 342-43.

Plaintiffs and defendants recognize *Tarasoff v. Regents of the University of California*, 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976), as the "lead case" and the case "most cited" for holding that a mental-

health-care provider owes a duty to warn and protect a nonpatient third party, when his patient confides his intention to kill an identified third party and later kills the third party. See also D. Mossman, *Critique of Pure Risk Assessment or, Kant Meets Tarasoff,* 75 U. Cin. L. Rev. 523 (2006). Defendants argue that while there are some decisions following *Tarasoff,* much of the recent authority on the question has rejected liability based on such a duty citing cases from other jurisdictions. Plaintiffs contend that the majority of jurisdictions that have addressed the question have recognized the duty of a mental-health-care provider to prevent third party harms and also cited cases and statutes from other jurisdictions.

However, it is clear from a careful reading of *Eckhardt v. Kirts,* 179 Ill. App. 3d 863 (1989), and our opinion in *Doe* that this court has rejected the rationale of the *Tarasoff* case. The malpractice action in *Eckhardt* was filed after a psychiatric patient shot and killed her husband with his police service revolver. The deceased husband's estate filed an action against the psychiatrist, alleging that he had negligently failed to treat the wife and had failed to warn the husband. The trial court granted defendant's motion for summary judgment and the appellate court affirmed. *Eckhardt v. Kirts,* 179 Ill. App. 3d at 865. The plaintiffs herein point out that notably absent from plaintiff's claims in *Eckhardt* were allegations of a negligent undertaking.

In *Eckhardt,* the court stated: "Plaintiff correctly points out that no Illinois case has directly addressed the question of a psychotherapist's duty to identifiable potential victims and urges this court to follow the analysis of *Tarasoff v. Regents of the University of California* (1976), 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 ***." *Eckhardt v. Kirts,* 179 Ill. App. 3d at 869. *Eckhardt* then discussed *Novak v. Rathnam,* 153 Ill. App. 3d 408 (1987), *Renslow, Kirk* and other cases and concluded:

"Based upon the prior discussion of the law, we believe the plaintiff must establish the following elements relating to the alleged duty owed in order to sustain her cause of action. First, the patient must make specific threat(s) of violence; second, the threat(s) must be directed at a specific and identified victim; and, third, a direct physician-patient relationship between the doctor and the plaintiff or a special relationship between the patient and the plaintiff. [Citations.]"[4] *Eckhardt v. Kirts*, 179 Ill. App. 3d at 872.

The court then held that "[s]ince plaintiff has failed to establish the first two elements of the duty to warn, the trial court properly granted summary judgment to the defendant." *Eckhardt v. Kirts*, 179 Ill. App. 3d at 873.

Justice Reinhard in a specially concurring opinion stated:

"The majority has apparently adopted, in large part, the approach of the California Supreme Court in *Tarasoff v. Regents of the University of California* (1976), 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14, in determining the duty of a physician to a third-party nonpatient injured by the act of a patient undergoing psychiatric treatment with the physician. We need not examine authority from a foreign jurisdiction, however, as our supreme court, in *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387, has established the duty of a physician in Illinois. The court in *Kirk* stated that 'a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship, as present in *Renslow,* between the patient and the plaintiff.' (*Kirk*, 117 Ill. 2d at 531, 513 N.E.2d at 399; see also *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 509, 520 N.E.2d 37.) In deciding the scope of the duty of a physician in Illinois, the supreme court considered decisions in other

---

[4]This language was cited with approval by the court below (373 Ill. App. 3d at 767), as well as *John Doe 1 v. North Central Behavioral Health Systems, Inc.*, 352 Ill. App. 3d 284, 290 (2004), *Charleston v. Larson*, 297 Ill App. 3d 540, 553 (1998), and *Reynolds v. National R.R. Passenger Corp.*, 216 Ill. App. 3d 334, 338 (1991).

jurisdictions, including cases with holdings similar to the approach used by the majority herein, which focus on whether the victim is a specifically identifiable potential victim, and rejected them. *Kirk*, 117 Ill. 2d at 531, 513 N.E.2d at 398-99." *Eckhardt v. Kirts*, 179 Ill. App. 3d at 874-75 (Reinhard, J., specially concurring).

In *Doe*, we cited with approval to the above-quoted paragraph from Justice Reinhard's specially concurring opinion and said: "Our only concern here is with the allegations in counts I and XI, which do not assert a therapist-patient relationship between Dr. McKay and the plaintiff. For the reasons expressed in *Kirk*, it would appear that these counts must therefore fail. See *Eckhardt v. Kirts*, 179 Ill. App. 3d 863, 874-75 (1989) (Reinhard, J., specially concurring) (decision in *Kirk* precludes recovery in wrongful death action brought against psychiatrist by estate of husband murdered by wife undergoing psychiatric treatment)." *Doe v. McKay*, 183 Ill. 2d 272, 279 (1998).

The appellate court in its holding that the third amended complaint contains sufficient factual allegations regarding the defendants' assumption of a duty to warn Teresa about the violent propensities of her husband did not mention or discuss *Kirk* or *Doe*. None of the cases cited by that court, including the *Siklas* case upon which it relied, involved a malpractice action by a nonpatient third party. We are not persuaded by plaintiffs' arguments that the long-established principles in *Kirk* and *Doe* should not be followed in this case. For the reasons stated, the judgment of the appellate court finding sufficient factual allegations regarding defendants' assumption of a voluntary duty to warn Teresa about the violent propensities of her husband is reversed.

### Transferred Negligence

This court recognized that a nonpatient third party plaintiff who was injured as a result of a negligent act performed by the hospital against a patient could

maintain an action against the hospital, because there was a special relationship between the plaintiff and the patient. *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348 (1977). In *Renslow*, a 13-year-old patient with Rh-negative blood was given a transfusion of Rh-positive blood by the hospital, thereby sensitizing her blood to the Rh-positive factor. The hospital did not inform the patient of the medical error or its effects. The patient did not learn of the medical error until she became pregnant eight years later. As a result of the error, her daughter was born with permanent damage to her brain, internal organs, and nervous system. This court determined that the defendant's duty of care to the patient should be transferred to the patient's infant daughter because of the special relationship between the infant and her mother and because the injury to the infant was the direct result of negligent treatment rendered to the mother. *Renslow v. Mennonite Hospital*, 67 Ill. 2d at 356-57. The *Renslow* court recognized the concept of transferred negligence, but it limited its reach to circumstances where there was a special, intimate relationship. *Renslow v. Mennonite Hospital*, 67 Ill. 2d at 357.

The defendants argue that a nonpatient third party plaintiff can bring a medical negligence lawsuit only if the plaintiff has a special relationship with the patient, citing *Kirk*. As discussed earlier, in *Kirk* plaintiff sought to recover damages for injuries he sustained while he was a passenger in a vehicle operated by a patient who had been recently released from the defendant hospital. The *Kirk* court considered decisions from a number of foreign jurisdictions, the social and public policy of Illinois, and this court's own holdings, and concluded that "the preferable view, and the one consistent with this court's holdings and with legislation based on social and public policy, is that a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient

relationship between the doctor and plaintiff or a special relationship, as present in *Renslow*, between the patient and the plaintiff." *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d at 531.

In the course of reaching its holding, the *Kirk* court stated: "*Renslow*, it would appear, is the only medical malpractice action in which this court recognized that a nonpatient third party with no patient-hospital or patient-doctor relationship was allowed to maintain a cause of action against a hospital and doctor. *** Obviously, that type of relationship does not exist between McCarthy, the patient who allegedly received negligent care, and Kirk, the passenger in his car." *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d at 528.

Plaintiffs contend that *Doe* "redefined the definition of transferred negligence to require that the injuries are physical, traceable to the negligent treatment of the patient, and not adverse to the patient's interests." Plaintiffs then conclude this case provides the precise type of injury that the *Doe* court held gives rise to transferred negligence because Teresa's injuries were physical, traceable to defendants' negligence and not adverse to her husband's interests.

In *Doe* the defendant psychologist treated the plaintiff's daughter, and plaintiff alleged the defendant induced his daughter into falsely believing plaintiff had sexually abused her when she was a child. The plaintiff alleged that the defendant's treatment of his daughter deprived him of his daughter's society and companionship and was an intentional interference with the parent-child relationship. The *Doe* court affirmed the trial court's dismissal of the case stating: "[W]e decline to apply *Renslow*'s concept of transferred negligence here. The relationship between a mother and a fetus is perhaps singular and unique, and it is demonstrably different from the relationship that exists between a parent and

an adult child." *Doe v. McKay*, 183 Ill. 2d at 280-81. The *Doe* court did note that the injuries to the plaintiff were not physical, they were not traceable to the negligent treatment of the patient, and that the interests of plaintiff and his daughter were adverse. The crux of the *Doe* case, however, is the statement: "The relationship between a mother and a fetus is perhaps singular and unique, and it is demonstrably different from the relationship that exists between a parent and an adult child." *Doe v. McKay*, 183 Ill. 2d at 280-81.

*Kirk* reaffirmed the *Renslow* decision to limit the scope of transferred negligence to cases involving a special relationship between the patient and the nonpatient plaintiff. See also *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 509 (1988); *Doe v. McKay*, 183 Ill. 2d 272, 280-81 (1998). After our decision in *Kirk*, the appellate court was reluctant to find that other types of relationships are of the same intimate nature as that presented in *Renslow*. See *Charleston v. Larson*, 297 Ill. App. 3d 540 (1998); *Britton v. Soltes*, 205 Ill. App. 3d 943 (1990); *Heigert v. Riedel*, 206 Ill. App. 3d 556 (1990).

Plaintiffs and *amicus* Illinois Trial Lawyers Association assert, however, that the *Renslow* court itself held the marital relationship is a "special relationship." This assertion is based on the following from *Renslow*: "[D]erivative actions, such as those of a husband or parent for the loss of the wife's or child's services, demonstrate that the law has long recognized that a wrong done to one person may invade the protected rights of one who is intimately related to the first. (See *Dini v. Naiditch* (1960), 20 Ill. 2d 406.) In these cases, because of the nature of the relationship between the parties harmed, the law recognizes a limited area of transferred negligence." *Renslow v. Mennonite Hospital*, 67 Ill. 2d at

357.[5] Plaintiffs argue that because *Renslow* has specifically identified the husband-wife relationship as the type that gives rise to transferred negligence, defendants' argument that Teresa and Richard did not have a special relationship would require us to overturn over 30 years of precedent.

The appellate court considered whether the plaintiffs alleged the existence of an intimate special relationship shared by Richard and Theresa comparable to that found in *Renslow*. The court stated:

> "In this case, the plaintiffs have alleged that Teresa and her husband shared an intimate, marital relationship and that Teresa was an active participant in his medical care, providing the defendants with information regarding her husband's changeable moods and behaviors and consulting with the defendants regarding her concerns about whether her husband would act on his ideas and threats and do her harm. In our view, the relationship, as alleged, between Teresa and Richard reaches the level of personal, familial intimacy that was present in *Renslow*. The injury inflicted on Teresa was physical and traceable to the allegedly negligent treatment of Richard's mental health conditions. The allegations of the complaint do not indicate that interests of the plaintiffs and Richard Street are adverse to each other. \*\*\* We conclude that the special relationship between husband and wife, under the circumstances of this case, is comparable to that found in *Renslow* \*\*\*." 373 Ill. App. 3d at 772.

We believe that treating the marital relationship as a special relationship for purposes of a derivative loss-of-consortium action does not mean the marital relationship should be treated as a special relationship for purposes of the direct personal injury actions brought by plaintiffs. There are different legal consequences between a derivative loss-of-consortium action and a direct personal injury action. Thus, this court has held that the

---

[5]*Dini v. Naiditch* held that a wife could sue for loss of consortium due to negligent injury of her husband.

general five-year statute of limitations, rather than the two-year statute of limitations applicable to actions for damages for an injury to the person, applies in an action brought for loss of consortium; that the consortium action is not based on an injury to plaintiff's person but on an injury to the personal relationship established by the marriage contract; and that the consortium action is legally distinct from a personal injury action. *Mitchell v. White Motor Co.*, 58 Ill. 2d 159, 162-63 (1974).

We conclude that the marriage relationship of Richard and Teresa is not comparable to the relationship between a mother and fetus. Accordingly, we disagree with the holding by the appellate court to the contrary.

## Conclusion

That part of the judgment of the appellate court holding that the third amended complaint sets forth sufficient factual allegations to establish a cause of action based on theories of voluntary undertaking and transferred negligence is reversed. In all other respects, the judgment of the appellate court is affirmed. The judgment of the circuit court dismissing the third amended complaint with prejudice is affirmed.

*Appellate court judgment is affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed.*

CHIEF JUSTICE FITZGERALD took no part in the consideration or decision of this case.